| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| DAVID R. ZARO (BAR NO. 124334)<br>E-Mail: dzaro@allenmatkins.com<br>MATTHEW D. PHAM (BAR NO. 287704)<br>E-Mail: mpham@allenmatkins.com<br>ALLEN MATKINS LECK GAMBLE<br>  MALLORY & NATSIS LLP<br>865 South Figueroa Street, Suite 2800<br>Los Angeles, California 90017-2543<br>Phone:  (213) 622-5555<br>Fax:  (213) 620-8816<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br>Judith Mendez, | CASE NO.: 2:24-bk-19000-WB<br>CHAPTER: 13 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE: December 10, 2024<br>TIME: 10:00 a.m.<br>COURTROOM: 1375 |

| **Movant:**<br>Maguire North Elm LLC |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee *(if any)*(Responding Parties), their attorneys *(if any),* and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1 .RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                          Page 1                          **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☐ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1 (d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☒ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than *(date)* 12/03/2024__ and *(time)* 11:59 p.m.___ ; and, you may appear at the hearing.

    a.  ☒ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b   ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  November 21, 2024____

Allen Matkins Leck Gamble Mallory & Natsis LLP_____
Printed name of law firm (if applicable)

Matthew D. Pham_____
Printed name of individual Movant or attorney for Movant

*/s/ Matthew D. Pham*_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 2                              **F 4001-1.RFS.RP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☐ Other *(specify)*:

2. *The Property at Issue (Property):*

    a. Address:

    *Street address:* 509 North Elm Drive
    *Unit/suite number*:
    *City, state, zip code:* Beverly Hills, CA 90210 (APN: 4341-022-023)

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit 3): Document No. 20190180128 (recorded on February 28, 2019, in the official records of the Los Angeles County Recorder).

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary bankruptcy petition under chapter   ☐ 7 ☐ 11 ☐ 12 ☒ 13
    was filed on *(date)* <u>10/31/2024</u>.

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on *(date)* _____.

    c. ☐ A plan, if any, was confirmed on *(date)* _____.

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

    (1) ☐ Movant's interest in the Property is not adequately protected.

        (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

    (2) ☒ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

        (B) ☒ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

        (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

        (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

        (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

        (F) ☐ Other *(see attached continuation page).*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 3                                    **F 4001-1.RFS.RP.MOTION**

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
     which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify):*

6. **Evidence in Support of Motion:** *(Declaration(s) MUST be signed under penalty of perjury and attached to this motion)*

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☐ Other:

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                           Page 4                                           **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: November 21, 2024

Allen Matkins Leck Gamble Mallory & Natsis LLP
Printed name of law firm *(if applicable)*
Matthew D. Pham
Printed name of individual Movant or attorney for Movant

*/s/ Matthew D. Pham*
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                Page 5                          F 4001-1.RFS.RP.MOTION

# REAL PROPERTY DECLARATION

I, *(print name of Declarant)* Jason Leibowitz _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because *(specify):*

   a. ☐ I am the Movant.

   b. ☒ I am employed by Movant as *(state title and capacity):* manager of Maguire North Elm LLC ("Movant")

   c. ☐ Other *(specify):*

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other *(see attached):*

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit <u>1 and 2</u>.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g. ,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit <u>3 and 4</u>.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other *(specify):*

4. a. The address of the Property is:

   *Street address:* 509 North Elm Drive
   *Unit/suite no.:*
   *City, state, zip code:* Beverly Hills, CA 90210 (APN: 4341-022-023)

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   Document No. 20190180128 (recorded on February 28, 2019, in the official records of the Los Angeles County Recorder).

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                          Page 6                          **F 4001-1.RFS.RP.MOTION**

5.  Type of property *(check all applicable boxes)*:

    a. ☐ Debtor's principal residence      b. ☒ Other residence
    c. ☐ Multi-unit residential      d. ☐ Commercial
    e. ☐ Industrial      f. ☐ Vacant land
    g. ☐ Other *(specify)*:

6.  Nature of the Debtor's interest in the Property:

    a. ☐ Sole owner

    b. ☐ Co-owner(s) *(specify)*:

    c. ☐ Lienholder *(specify)*:

    d. ☒ Other *(specify)*:  Beneficiary under a sham deed of trust

    e ☒ The Debtor ☐ did ☒ did not list the Property in the Debtor's schedules.

    f ☒ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☒ trust deed.
        The deed was recorded on *(date)* 11/07/2024    .

7.  Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other *(specify)* _____
    that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 3.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit 1.

    c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit 2 and 4.

8.  Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ |
| b. | Accrued interest: | $ | $ | $ |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[            ] | $[            ] | $[            ] |
| g. | TOTAL CLAIM as of *(date)*: | $ | $ | $ |
| h. | ☐ Loan is all due and payable because it matured on *(date)* _____ | | | |

9.  Status of Movant's foreclosure actions relating to the Property *(fill the date or check the box confirming no such action has occurred)*:

    a. Notice of default recorded on *(date)* 07/11/2024    or ☐ none recorded.

    b. Notice of sale recorded on *(date)* 10/15/2024    or ☐ none recorded.

    c. Foreclosure sale originally scheduled for *(date)* 11/14/2024    or ☐ none scheduled.

    d. Foreclosure sale currently scheduled for *(date)* 12/12/2024    or ☐ none scheduled.

    e. Foreclosure sale already held on *(date)* _____ or ☐ none held.

    f. Trustee's deed upon sale already recorded on *(date)* _____ or ☐ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached *(optional)* as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ *(chapter 7 and 11 cases only)* Status of Movant's loan:

    a.  Amount of current monthly payment as of the date of this declaration: $ _____ for the month of _____ 20__.

    b.  Number of payments that have come due and were not made: _____. Total amount: $ _____

    c.  Future payments due by time of anticipated hearing date *(if applicable)*:

        An additional payment of $ _____ will come due on *(date)* _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $ _____ will be charged to the loan.

    d.  The fair market value of the Property is $ _____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other *(specify):*

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor *(if any)* | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other *(specify):*

    g.  ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ _____ and is _____% of the fair market value of the Property.

    h.  ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ _____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                        Page 8                                        **F 4001-1.RFS.RP.MOTION**

i. ☐ Estimated costs of sale: $ _____ (estimate based upon _____ % of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date *(if applicable)*: _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                  $
*(For details of type and amount, see Exhibit _____)*

e. Attorneys' fees and costs:                                  $
*(For details of type and amount, see Exhibit _____)*

f. Less suspense account or partial paid balance:                         $[                    ]

             TOTAL POSTPETITION DELINQUENCY:          $

g. Future payments due by time of anticipated hearing date *(if applicable):* _____.
An additional payment of $ _____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $ _____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

$ _____ received on *(date)* _____
$ _____ received on *(date)* _____
$ _____ received on *(date)* _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT. TRUSTEE).*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 9                    **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on *(date)* _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on *(date)*_____, which is  ☐ prepetition  ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

 a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

 b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

 c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

 d. ☐ Other *(specify)*:

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

 a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

 b. ☒ Multiple bankruptcy cases affecting the Property include: **(in addition to this case):**
  1. Case name: In re Romelia Maria Castanon
     Chapter: 7    Case number: 2:24-bk-19077-DS
     Date dismissed: _____    Date discharged:_____    Date filed: 11/04/2024
     Relief from stay regarding the Property ☐ was   ☐ was not granted.

  2. Case name: In re Oscar Humberto Parada
     Chapter: 13    Case number: 1:24-bk-11853-MB
     Date dismissed: 11/20/2024    Date discharged:_____    Date filed: 11/04/2024
     Relief from stay regarding the Property ☐ was   ☐ was not granted.

  3. Case name: In re Isaac Daniel Gonzales
     Chapter: 7    Case number: 6:24-bk-16604-RB
     Date dismissed: _____    Date discharged:_____    Date filed: 11/01/2024
     Relief from stay regarding the Property ☐ was   ☐ was not granted.

 ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

 ☒ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017    Page 10    F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


November 21, 2024    Jason Leibowitz
*Date*                *Printed name*                                    *Signature*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                      Page 12              **F 4001-1.RFS.RP.MOTION**

1

## SUPPLEMENTAL DECLARATION OF JASON LEIBOWITZ

2

I, Jason Leibowitz, declare as follows:

3

1.      I am the manager of Maguire North Elm LLC ("Maguire"), and I am authorized to

4

make this declaration on behalf of Maguire.

5

2.      I submit this declaration in support of Maguire's motion for relief from the

6

automatic stay.  Where the matters stated in this declaration are statements of fact that are within

7

my personal knowledge, they are true and correct.  Where the matters stated in this declaration are

8

statements of fact that are not within my personal knowledge, they are (a) derived from my review

9

of the business records kept by Maguire (including records received by Maguire from Preferred

10

Bank), or (b) based on information and belief, and such statements are true and correct to the best

11

of my knowledge, information, and belief.  The records of Maguire were (a) made at or near the

12

time of the occurrence of the matters set forth therein by, or from the information transmitted by, a

13

person having knowledge of those matters, (b) kept in the course of its regularly conducted

14

business activities, and (c) by its custom, made as part of its regularly conducted business

15

activities.  If called to testify, I could and would, without waiver of any applicable privilege,

16

testify that the facts stated in this declaration are true and correct to the best of my knowledge,

17

information, and belief.

18

3.      Maguire, as successor in interest by assignment, is the holder of that certain

19

*Promissory Note* dated February 25, 2019 (the "Note"), and the beneficiary under that certain

20

*Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated

21

February 25, 2019, which was recorded in the official records of the Los Angeles County

22

Recorder on February 28, 2019, as Document No. 20190180128 (the "Deed of Trust").  Preferred

23

Bank, the original holder of the Note and original beneficiary under the Deed of Trust, assigned its

24

interest in the Note to Maguire as evidenced by that certain *Allonge* dated May 15, 2024 (the

25

"Allonge"), and also assigned its interest in the Deed of Trust to Maguire as evidenced by that

26

certain *Assignment of Deed of Trust and Assignment of Rents* dated May 15, 2024, which was

27

recorded in the official records of the Los Angeles County Recorder on June 27, 2024, as

28

Document No. 20240420449 (the "DOT Assignment").  True and correct copies of the Note,

Allonge, Deed of Trust, and DOT Assignment are attached hereto as **Exhibits 1, 2, 3, and 4**, respectively.

4. The promisor and trustor under the Note and Deed of Trust is Westpoint Capital Group 1, LLC ("Westpoint 1"). The Note evidences Westpoint 1's obligation to repay a loan in the principal amount of $6,373,200, with interest, which loan was made to Westpoint 1 for the purposes of financing its acquisition of that certain real property commonly described as 509 North Elm Drive, Beverly Hills, California 90210 (APN: 4341-022-023) (the "Property") and its construction of a custom single family residence thereon. Under the Deed of Trust, which secured the obligations under the Note, Westpoint 1 granted a security interest in, among other collateral, the Property.

5. The Note had an original maturity date of August 25, 2020, but Preferred Bank and Westpoint 1 subsequently entered into a number of extension agreements to extend the maturity date thereunder, the last of which extended the maturity date to March 24, 2024. To date, Westpoint 1 has not paid the amounts due under the Note.

6. On or about July 9, 2024, pursuant to the power of sale under the Deed of Trust, Maguire caused First American Title Insurance Company, the substitute trustee appointed under the Deed of Trust ("First American"), to issue that certain *Notice of Default and Election to Sell Under Deed of Trust*, which was recorded in the official records of the Los Angeles County Recorder on July 11, 2024, as Document No. 20240452323 (the "Notice of Default"). Among the defaults listed in the Notice of Default was the maturity default under the Note and Deed of Trust. A true and correct copy of the Notice of Default is attached hereto as **Exhibit 5**.

7. Following the issuance of the Notice of Default, Robert Neman and Farhad Farahmand, two of the principals of Westpoint 1, contacted me to request that Maguire waive a certain portion of the default interest accrued under the Note. However, Westpoint 1's proposal was not acceptable to Maguire, so Maguire declined and continued with the foreclosure process.

8. On or about October 11, 2024, Maguire caused First American to issue that certain *Notice of Trustee's Sale*, which was recorded in the official records of the Los Angeles County Recorder on October 15, 2024, as Document No. 20240699905 (the "Notice of Trustee's Sale").

1    The Notice of Trustee's Sale set a trustee's sale of the Property for **November 14, 2024**, at

2    11:00 a.m.  A true and correct copy of the Notice of Trustee's Sale is attached hereto as **<u>Exhibit 6</u>**.

3            9.      Following the issuance of the Notice of Trustee's Sale, attorney Edmond

4    Nassirzadeh of the Nass Law Firm contacted me, representing that he had been retained by

5    Westpoint 1 and proposing to me what amounted to the same proposal previously rejected by

6    Maguire.  Maguire similarly declined this proposal again.  The last communication that I had

7    received from Mr. Nassirzadeh, or any of Westpoint 1's principals, was on November 8, 2024.

8            10.     On information and belief, in the morning of **November 13, 2024** (i.e., one day

9    before the scheduled trustee's sale of the Property), the foreclosure trustee First American received

10    a message via facsimile, which sought to provide notice of bankruptcy cases filed by certain

11    debtors (who were not Westpoint 1) who purportedly held an interest in the Property (the "<u>Fax</u>

12    <u>Message</u>").  The Fax Message was subsequently forwarded to me.  Due to the receipt of the Fax

13    Message, First American postponed the trustee's sale of the Property from November 14, 2024, to

14    December 12, 2024.  A true and correct copy of the Fax Message is attached hereto as **<u>Exhibit 7</u>**.

15            11.     Included in the Fax Message was a purported deed of trust titled *Long Form Deed*

16    *of Trust and Assignment of Rents*, dated October 1, 2024, and seemingly recorded on November 7,

17    2024 (the "<u>Sham Deed of Trust</u>").  The Sham Deed of Trust reflects that Westpoint 1 purportedly

18    granted a security interest in the Property to the following four beneficiaries to secure the

19    repayment of a $10,000 debt: "ROMELIA MARIA CASTANON, OSCAR HUMBERTO

20    PARADA, TSAAC [sic] DANIEL GONZALES and JUDITH MENDEZ."  The Sham Deed of

21    Trust was purportedly executed by Messrs. Neman and Farahmand (two of the principals of

22    Westpoint 1) on October 31, 2024.  I have since been advised that the Sham Deed of Trust had, in

23    fact, been recorded in the official records of the Los Angeles County Recorder on November 7,

24    2024, as Document No. 20240768891.  In other words, the Sham Deed of Trust is now a cloud on

25    title on the Property.  A true and correct copy of the recorded Sham Deed of Trust is attached

26    hereto as **<u>Exhibit 8</u>**.

27            12.     The Fax Message stated, "The junior lien holders '(ROMELIA MARIA

28    CASTANGO [sic] AND OSCAR HUMBERTO PARADA) filed a chapter 7 and chapter 13

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4882-9276-2109.4

bankruptcies [sic] under case numbers 2:24-bk-19077-DA and 1:24-bk-11853-MB in the Central

District of California," and also attached the first pages of these individuals' purported voluntary

petitions.  To confirm that bankruptcy cases of the purported beneficiaries had actually been filed

and were pending, I used PACER to run searches using the two case numbers identified in the Fax

Message, as well as the names of the four purported beneficiaries identified in the Sham Deed of

Trust.  From those PACER searches, I determined the following:

        a.      An individual pro se debtor named "Romelia Maria Castanon" filed a

chapter 7 petition in this Court on November 4, 2024, commencing the bankruptcy case

captioned as *In re Romelia Maria Castanon* and bearing Case No. 2:24-bk-19077-DS (the

"Castanon Case");

        b.      An individual pro se debtor named "Oscar Humberto Parada" filed a

chapter 13 petition in this Court on November 4, 2024, commencing the bankruptcy case

captioned as *In re Oscar Humberto Parada* and bearing Case No. 1:24-bk-11853-MB (the

"Parada Case"), which has since been dismissed on November 20, 2024;

        c.      An individual pro se debtor named "Isaac Daniel Gonzales" filed a

chapter 7 petition in this Court on November 1, 2024, commencing the bankruptcy case

captioned as *In re Isaac Daniel Gonzales* and bearing Case No. 6:24-bk-16604-RB (the

"Gonzales Case"); and

        d.      An individual pro se debtor named "Judith Mendez" filed a chapter 13

petition in this Court on October 31, 2024, commencing the bankruptcy case captioned as

*In re Judith Mendez* and bearing Case No. 2:24-bk-19000-WB (the "Mendez Case," and

collectively, with the Castanon Case, Parada Case, and Gonzales Case, the "Hijacked

Cases").

I have also run a PACER search for bankruptcy cases filed by Westpoint 1.  Westpoint 1 has not

commenced its own bankruptcy case to date.

        13.      Since receiving the Fax Message, I have spoken with the (now-former) debtor

Oscar Humberto Parada (calling the phone number listed on the docket of his bankruptcy case),

and during our call, he indicated that, until he had spoken with me, he had never heard of

1    Westpoint 1 or the Property or knew of the existence of the Sham Deed of Trust or any $10,000

2    loan or that he had been granted an interest in the Property by Westpoint 1.

3        14.    In an abundance of caution, Maguire is filing substantively similar motions for

4    relief from the automatic stay in the three still-pending Hijacked Cases, with each such motion,

5    among other things, seeking relief under 11 U.S.C. § 362(d)(4). For each motion filed in each of

6    the three remaining Hijacked Cases, Maguire is serving a copy of the motion and related papers on

7    (a) the debtor Romelia Maria Castanon and the trustee Howard Ehrenberg in the Castanon Case,

8    (b) the former debtor Oscar Humberto Parada, (c) the debtor Isaac Daniel Gonzales and the trustee

9    Lynda Bui in the Gonzales Case, (d) the debtor Judith Mendez and the trustee Nancy Curry in the

10   Mendez Case, (e) Maguire 1, (f) Edmond Nassirzadeh of the Nass Law Firm, counsel for

11   Maguire 1, and (g) potential lienholders reflected on a trustee's sale guarantee relating to the

12   Property that was issued by First American on or about July 15, 2024.

13       I declare under penalty of perjury that the foregoing is true and correct. Executed on

14   November 21, 2024, at New York, New York.

15

16                                              _____

17                                                      Jason Leibowitz

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Exhibit 1
Page 6

# PROMISSORY NOTE

$6,373,200.00          LOS ANGELES, CALIFORNIA          February 25, 2019

FOR VALUE RECEIVED, WESTPOINT CAPITAL GROUP 1 LLC, a California limited liability company ("Borrower"), promises to pay to PREFERRED BANK, a California banking corporation ("Lender"), or its order, at its office located at 601 S. Figueroa Street, 29th Floor, Los Angeles, California 90017, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Six Million Three Hundred Seventy-Three Thousand Two Hundred and No/100 Dollars ($6,373,200.00), or so much thereof as shall have been advanced and is outstanding together with interest, on the outstanding principal balance, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note").

**LOAN AGREEMENT.**  This Note is the "Note" as defined in that certain Construction Loan Agreement (the "Loan Agreement") of even date herewith, entered into by and between Borrower and Lender, as it may be amended from time to time, and is subject to all of the terms and conditions thereof. All terms not defined herein shall have the same meaning as in the Loan Agreement. In the event of a conflict between the terms of this Note and the Loan Agreement, the terms of this Note shall prevail.

**INTEREST RATE.**  Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360)-day year and actual days elapsed and shall accrue at the per annum rate (the "Note Rate") of the greater of (i) six and one-quarter of one percent (6.25%) or (ii) one percent (1.00%) in excess of "The Wall Street Journal Prime Rate", as the rate may change from time to time. The Wall Street Journal Prime Rate is and shall mean the variable rate of interest, on a per annum basis, which is announced and/or published in the Money Rates Section of The Wall Street Journal from time to time. The Note Rate shall be redetermined whenever The Wall Street Journal Prime Rate changes. Borrower understands and acknowledges that The Wall Street Journal Prime Rate is one of Lender's base rates, and only serves as a basis upon which effective rates of interest are calculated for loans making reference thereto and may not be the lowest of Lender's base rates. If The Wall Street Journal Prime Rate becomes unavailable during the term of this Note, Lender may designate a substitute index after notice to Borrower.

**PRINCIPAL AND INTEREST PAYMENTS**.  Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on March 25, 2019, and shall continue to be due and payable, in arrears, on the same day of each and every calendar month thereafter until the Maturity Date (as hereinafter defined).

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, the Construction Deed of Trust (as defined in the Loan Agreement), the Loan Agreement, and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

**APPLICATION OF PAYMENTS**. All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

a.    First. To pay any and all interest due, owing and accrued;

b.    Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, the Construction Deed of Trust, the Loan Agreement, and the other Loan Documents; and

c.    Third. To pay the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE**. On August 25, 2020 ("Maturity Date"), the entire unpaid principal balance, and all unpaid accrued interest thereon, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate (as hereinafter defined). The Maturity Date may be extended pursuant to Section 3.4 of the Loan Agreement.

**UNPAID INTEREST, CHARGES AND COSTS**. Interest, late charges, costs or expenses that are not received by Lender within ten (10) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a Business Day, including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on

**Exhibit 1**
**Page 8**

account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever.

**DEFAULT**. Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

> (i)    Lender does not receive a payment in the amount and within the time and manner as set forth herein; or
>
> (ii)   There shall be an Event of Default under the Loan Agreement; or
>
> (iii)  There shall be a default under any of the other Loan Documents.

Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE**. From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to eight percent (8%) over the Note Rate.

**PREPAYMENT**. The principal amount of this Note may be prepaid in whole or in part; provided, however, that written notice of prepayment is received by Lender concurrently therewith. Any such prepayment shall not result in a reamortization, deferral, postponement, suspension, or waiver of any and all principal or other payments due under this Note.

**LATE CHARGES**. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within ten (10) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that

**Exhibit 1
Page 9**

five percent (5%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY AND ACCELERATION**. This Note is secured by, among other things, the Property, pursuant to the Construction Deed of Trust. The Construction Deed of Trust contains, among other provisions, a provision for the immediate acceleration of this Note upon the occurrence of any Default, any event of default under the Construction Deed of Trust, or any sale, transfer, conveyance, encumbrance or alienation of Borrower's right, title or interest (or any portion thereof) in the Property. Reference is made to the Construction Deed of Trust for the specific provisions thereof.

**COSTS AND EXPENSES**. Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Construction Deed of Trust or any other Loan Documents, including, but not limited to, any and all attorneys' fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Construction Deed of Trust and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

**WAIVERS**. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute

**Exhibit 1
Page 10**

of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**USA PATRIOT ACT NOTICE.** Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account or obtains a loan. Lender will ask for Borrower's legal name, address, tax ID number or social security number and other identifying information. Lender may also ask for additional information or documentation or take other actions reasonably necessary to verify the identity of Borrower, Guarantor or other related persons.

[SIGNATURE PAGE FOLLOWS]

**Exhibit 1
Page 11**

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

**BORROWER:**

WESTPOINT CAPITAL GROUP 1 LLC,
a California limited liability company

By: Westpoint Capital Group LLC,
    a California limited liability company
Its: Manager

    By: Madison Investment Group, Inc.,
        a California corporation
    Its: Manager

        By: _____
        Name: Farhad Farahmand
        Its: President

    By: Neman Capital Group LLC,
        a California limited liability company
    Its: Manager

        By: _____
        Name: Robert Neman
        Its: Sole Member and Manager

    By: Bimac, Inc.,
        a California corporation
    Its: Manager

        By: _____
        Name: Katsumi Kobayashi
        Its: President

**Exhibit 1**
**Page 12**

# EXHIBIT 2

**Exhibit 2**
**Page 13**

## ALLONGE

This Allonge is affixed to, and is hereby made a part of, that certain Promissory Note, dated February 25, 2019, in the original principal amount of Six Million Three Hundred Seventy-Three Thousand Two Hundred and No/100 Dollars ($6,373,200.00) ("Note"), made by WESTPOINT CAPITAL GROUP 1 LLC, a California limited liability company, for the benefit of PREFERRED BANK, a California banking corporation ("Assignor"), and evidences the endorsement of the Note by Assignor, to wit:

PAY TO THE ORDER OF MAGUIRE NORTH ELM LLC, a New York limited liability company, without recourse or warranty.

Dated: May 15, 2024

ASSIGNOR:

PREFERRED BANK,
a California banking corporation

By: _____
Name: _Sylvia Tseng_____
Its: _Senior Vice President_____

**Exhibit 2
Page 14**

# EXHIBIT 3

**Exhibit 3**
**Page 15**



**This page is part of your document - DO NOT DISCARD**



# 20190180128



**Pages:**
**0029**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/28/19 AT 08:00AM**

|  |  |
|---|---|
| FEES: | 148.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 148.00 |



**L E A D S H E E T**



201902280110055

**00016316579**



009660497

**SEQ:**
**22**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

T10

**Exhibit 3**
**Page 16**

*2*

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME    **PREFERRED BANK**

STREET
ADDRESS    **601 S Figueroa St 29th Floor**

CITY, STATE &
ZIP CODE    **Los Angeles, CA 90017**

02/23/2019

*20190180128*

**SPACE ABOVE FOR RECORDER'S USE ONLY**

CONSTRUCTION DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☒ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

**Exhibit 3**
**Page 17**

3

1607733

**North American Title**

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO

PREFERRED BANK
601 S. Figueroa Street, 29th Floor
Los Angeles, California 90017
Attention: Note Department

Assessor's Parcel Nos.: 4341-022-023

## CONSTRUCTION DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective on the 25th day of February 2019, by WESTPOINT CAPITAL GROUP 1 LLC, a California limited liability company ("Trustor"), whose address is 9631 W. Olympic Blvd., Beverly Hills, California 90212, to NORTH AMERICAN TITLE COMPANY, as Trustee ("Trustee"), for the benefit of PREFERRED BANK, a California banking corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON <u>EXHIBIT "A"</u> ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

SEE EXHIBIT "B"

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in Los Angeles County, California, described as:

[SEE <u>EXHIBIT "A"</u> ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

**Exhibit 3
Page 18**  22b



TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH: Any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH:  All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection

Exhibit 3
Page 19

therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH:  All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH:  All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined) ;

TOGETHER WITH:  All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive.  It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property.  Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property."  As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures.  As used herein, the term "Personalty" shall include all furniture, furnishings,

**Exhibit 3**
**Page 20**



equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

**FOR THE PURPOSE OF SECURING:**

(1)     Payment of the sum of Six Million Three Hundred Seventy-Three Thousand Two Hundred and No/100 Dollars ($6,373,200.00), together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note of even date herewith (the "Note") executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms);

(2)     Performance of each and every term, covenant and condition of that certain Construction Loan Agreement of even date herewith by and between Trustor and Lender, and all modifications, renewals or extensions thereof ("Agreement");

(3)     Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(4)     Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(5)     Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

(1)     PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Property in fee simple. Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.

**Exhibit 3
Page 21**

(2)     PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS:
The term "Taxes" shall mean all taxes, bonds and assessments, both general and special,
affecting or levied upon the Property or any part thereof, assessments on water company
stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any
part thereof, in addition to or as a substitution in whole or in part for any real estate taxes
or assessments, all taxes or excises measured by or based in whole or in part upon the
rents, operating income, or any other factor relating to the Property, or any part thereof,
and all license fees, taxes and excises imposed upon Lender (but not any federal or state
income taxes imposed upon Lender) and measured by or based in whole or in part upon
the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee,
charge, or other imposition in connection with the Property or Trustor, payment of which
Lender shall deem to be necessary to protect, preserve, and defend Lender's interests
hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions
attributable to the Property, at least ten (10) days before delinquency directly to the payee
thereof, or in such other manner as Lender may designate in writing. Trustor shall
promptly furnish to Lender all notices of amounts due under this paragraph, and if
Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing
payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to
Lender receipts evidencing all other payments above required.

At the request of Lender, or otherwise upon written agreement between Trustor
and Lender, or as provided by applicable law, Trustor shall pay to Lender, on each day on
which monthly installments of principal and/or interest are payable under the Note, until
the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes
and Other Impositions, together with annual insurance premiums on all policies of
insurance required by this Deed of Trust, plus additional amounts reasonably estimated
by Lender for the purpose of paying future installments of Taxes, Other Impositions, and
insurance premiums. In such event, Trustor further agrees to cause all bills, statements,
or other documents relating to Taxes, Other Impositions, and insurance premiums to be
sent or mailed directly to Lender. Upon receipt of such bills, statements, or other
documents, and provided Trustor has deposited sufficient funds with Lender pursuant to
this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the
funds so deposited with Lender for that purpose, subject to Lender's rights to seize and
apply said funds to satisfy, in whole or in part, any default by Trustor. If at any time and
for any reason the funds deposited with Lender are or will be insufficient to pay such
amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor
shall immediately deposit an amount equal to such deficiency with Lender.
Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed
a trustee of said funds or to be obligated to pay any amounts in excess of the amount of
funds deposited with Lender pursuant to this paragraph (2). Lender shall not be obligated
to pay or allow any interest on any sums held by Lender pending disbursement or
application hereunder, and Lender may impound or reserve for future payment of Taxes,
Other Impositions, and insurance such portion of such payments as Lender may in its
absolute discretion deem proper, applying the balance on the principal of or interest on
the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of
that portion of said payments which has been applied by Lender on principal of or
interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes,

**Exhibit 3
Page 22**



Other Impositions, or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby. Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's obligation in connection with the above Note, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as render the Note, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

(3)    TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT COULD RESULT IN LIENS ON THE PROPERTY: Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded. Trustor shall pay at or prior to maturity any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

**Exhibit 3
Page 23**

(4)    TRUSTOR TO MAINTAIN INSURANCE: (a) Trustor shall maintain insurance covering the Property against loss or damage by fire, earthquake and other risks as shall from time to time be required by Lender as necessary to protect the security interest of Lender in the Property. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's sole and absolute opinion and judgment. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in no event less than one (1) year's gross rental income and other revenues from the Property, and (iii) comprehensive general liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time required by Lender. (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5)    INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES: (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). (b) All causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any

Exhibit 3
Page 24

damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. (c) Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) if a default has occurred hereunder or if Lender determines its security hereunder has been impaired be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to a condition satisfactory to Lender; or (iii) any such amount may be divided in any manner among any such application, use or release. Awards received by Lender under the provisions of section (a) and section (b) of this paragraph (5) may, at the option of Lender, be released to Trustor to replace, restore or reconstruct the Property to a condition satisfactory to Lender in the event that Lender's security interest has not been impaired thereby in the opinion of Lender, and provided no default under paragraph (14) exists. No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

(6)    MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a)    Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects,

Exhibit 3
Page 25

and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)    Other than the demolition of the existing improvements located on the Property as of the date hereof required in order to construct the Project (as defined in the Agreement) in replacement thereof, Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, Fixtures or Personalty comprising the Property, without the prior written consent of Lender. No material changes are to be made in any plans and/or specifications as approved by Lender without Lender's prior written consent. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

3234667 2 | 050625-0697                    9

Exhibit 3
Page 26

(c)    Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents and covenants to Lender that Trustor and the Property presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are described in Exhibit "B" attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants, represents and covenants to Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property. Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under

**Exhibit 3
Page 27**



any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)    If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of the Trustor, unless expressly otherwise therein provided.

(e)    Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7)    LEGAL ACTIONS AND PAYMENT OF RELATED COSTS: Trustor shall appear in and defend any action or proceeding that may, in the Lender's judgment, affect the Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with

**Exhibit 3
Page 28**



Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust. Trustor will, upon demand by Lender, commence any action or proceeding required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8)    LENDER'S RIGHTS TO INSPECT THE PROPERTY: Lender and its agents, employees and contractors, may enter upon the Property at any time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).

(9)    SUBSTITUTION OF TRUSTEE: From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10)    MISCELLANEOUS POWERS OF LENDER AND TRUSTEE: In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any

Exhibit 3
Page 29



agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11)    ASSIGNMENT AND COLLECTION OF RENTS: (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust, being retained by Trustor. (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor. If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received. (c) At any time, whether or not an event of default exists under this Deed of Trust, or any other agreement or obligation secured by this Deed of Trust, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property. These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made. In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

(12)    RECONVEYANCE OF THE PROPERTY: Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the

Exhibit 3
Page 30



last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13)    CHANGE OF LENDER'S RECORDS:  In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a fee prescribed by the Lender to so change its records.

**ACCELERATION AND DEFAULT:**

(14)    CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR:  A default under this Deed of Trust shall occur in the event that: (a) Trustor fails to pay when due: (i) any sum payable under the Note in accordance with the terms thereof; or (ii) any sum the payment of which is required or secured by this Deed of Trust; (b) Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed by Trustor; or (e) there is an Event of Default under the Agreement.

(15)    LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein not expressly permitted in the Agreement, or any interest in Trustor not expressly permitted in the Agreement, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

(16)    LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a)    If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in

**Exhibit 3**
**Page 31**

such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17)    TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee

**Exhibit 3**
**Page 32**



may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Deed of Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18)    OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust  (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19)    TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED: By accepting payment of any sum secured by this Deed of Trust after its due

**Exhibit 3
Page 33**



date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20)    SUCCESSORS IN INTEREST: The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21)    STATEMENTS CONCERNING THE STATUS OF THE LOAN: From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22)    TRUSTEE'S OBLIGATIONS: The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23)    OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER: If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24)    NO OFFSETS: No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or

**Exhibit 3
Page 34**

dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25)    GOVERNING LAW:  The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder.  The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26)    AGREEMENT CHANGED ONLY BY WRITING:  This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27)    TIME:  Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

(28)    NOTICE:  Except for any notice required under applicable law to be given in another manner:  (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

> PREFERRED BANK
> 601 S. Figueroa Street, 29th Floor
> Los Angeles, California 90017
> Attention: Note Department

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c).

(c)    Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing and sent by facsimile and mail or certified mail to the appropriate party at its respective address.  Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed via regular mail to the appropriate party at its respective address.  If any notice is given by certified mail, it will be effective when deposited in the mails with first class or airmail postage prepaid; or if given by facsimile and mail, when the facsimile is sent.

(29)    TITLES, CAPTIONS, AND HEADINGS:  The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30)    SEVERABILITY OF PROVISIONS:  If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent

Exhibit 3
Page 35



jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31)    ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST: The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32)    LENDER'S RELIANCE: The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

(33)    SECURITY AGREEMENT:

(a)    Security Interest. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements. Trustor authorizes Lender to file such financing statements and cause such financing statements and other assurances as Lender may from time to time require to be recorded and filed at such times and places as may be required or permitted by law to create, perfect and preserve such security interest.

(c)    Remedies on Default. Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere;  (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

Exhibit 3
Page 36



(d)     Fixture Filing. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

(34)     SALE OF INTEREST: Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

(35)     SEPARATE PROPERTY: Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

(36)     BOOKS AND RECORDS: Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time.

(37)     INSPECTION, APPRAISAL, AND ASSESSMENTS: Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default,(a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto. All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust. All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof. Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property. Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a

**Exhibit 3
Page 37**



representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

(38)    DEFINITIONS: All terms not defined herein shall be defined as set forth in the Agreement.

(39)    <u>WAIVER OF RIGHT TO TRIAL BY JURY; JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY.</u> **EACH PARTY TO THIS DEED OF TRUST HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS DEED OF TRUST OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION THEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS DEED OF TRUST OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, EACH PARTY HERETO HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. EACH PARTY ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. THE PARTIES HERETO HEREBY AGREE THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BOTH SIDES AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE THEIR RESPECTIVE LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY TO THIS**

**Exhibit 3
Page 38**

DEED OF TRUST MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY AND THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

Trustor has initialed this Section 39 to further indicate Trustor's awareness and acceptance of each and every provision hereof.

Trustor's Initials

(Farahmand)          (Neman)               (Kobayashi)

[Signature page to follow.]

**Exhibit 3**
**Page 39**



THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF
DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR
AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

("Trustor")

WESTPOINT CAPITAL GROUP 1 LLC,
a California limited liability company

By: Westpoint Capital Group LLC,
    a California limited liability company
Its: Manager

    By: Madison Investment Group, Inc.,
        a California corporation
    Its: Manager

        By: _____
        Name: Farhad Farahmand
        Its: President

    By: Neman Capital Group LLC,
        a California limited liability company
    Its: Manager

        By: _____
        Name: Robert Neman
        Its: Sole Member and Manager

    By: Bimac, Inc.,
        a California corporation
    Its: Manager

        By: _____
        Name: Katsumi Kobayashi
        Its: President

**Exhibit 3**
**Page 40**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                )
                                   ) ss
COUNTY OF *Los Angeles*            )

On *2/26/2019* , before me, *Lynne P. Davis* , a Notary Public, personally appeared *Farhad Farahmand* , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                )
                                   ) ss
COUNTY OF *Los Angeles*            )

On *2/26/2019* , before me, *Lynne P. Davis* , a Notary Public, personally appeared *Robert Neman* , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

LYNNE P DAVIS
Notary Public – California
Los Angeles County
Commission # 2182625
My Comm Expires Feb 9, 2021

**Exhibit 3**
**Page 41**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       ) ss
COUNTY OF _Los Angeles_                )

On _2/26/2019_, before me, _Lynne P. Davis_, a Notary Public, personally appeared _Katsumi Kobayashi_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

LYNNE P DAVIS
Notary Public - California
Los Angeles County
Commission # 2187625
My Comm. Expires Feb 9, 2021

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

STATE OF CALIFORNIA                    )
                                       ) ss
COUNTY OF _____              )

On _____, before me, _____, a Notary Public, personally appeared _____ ___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

32346672 | 050625-0697                    25

**Exhibit 3**
**Page 42**

## EXHIBIT "A"
### LEGAL DESCRIPTION

Real property in the City of Beverly Hills, County of Los Angeles, State of California, described as follows:

LOT 24 BLOCK 93 OF BEVERLY HILLS, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 54 PAGES 57 TO 60 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500 FEET WITHOUT RIGHTS OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 4341-022-023

**Exhibit 3**
**Page 43**

## EXHIBIT "B"
## (PERMITTED TOXIC MATERIALS)

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor has licenses from the proper authority, such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic materials and/or hazardous substances.

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of the Trustor.

**Exhibit 3**
**Page 44**

# EXHIBIT 4

**Exhibit 4**
**Page 45**

 

**This page is part of your document - DO NOT DISCARD**



## 20240420449



**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**06/27/24 AT 02:24PM**

| | |
|---|---|
| FEES: | 72.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 297.00 |



**L E A D S H E E T**



202406270250033

**00024569662**



014754821

## SEQ:
## 01

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**



*E492068*

Accommodation Recording Only
Chicago Title

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

Wachtel Missry LLP
885 Second Avenue, 47th Floor
New York, New York 10017
Attention: Eli D. Dweck, Esq.

---

APN 4341-022-023

## ASSIGNMENT OF DEED OF TRUST AND ASSIGNMENT OF RENTS

This ASSIGNMENT OF DEED OF TRUST AN ASSIGNMENT OF RENTS ("Assignment") is made this 15th day of May 2024, by PREFERRED BANK, a California banking corporation ("Assignor" or "Bank"), to MAGUIRE NORTH ELM LLC, a New York limited liability company ("Assignee").

FOR VALUE RECEIVED, Assignor hereby grants, assigns, and transfers to Assignee any and all of its beneficial interest under that certain (i) Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated February 25, 2019, executed by WESTPOINT CAPITAL GROUP 1 LLC, a California limited liability company ("Trustor") in favor of Bank and recorded on February 28, 2019, as Instrument No. 2019-0180128 in the Official Records of Los Angeles County, California, as a lien on certain real property described on Exhibit A, attached hereto and made a part hereof, and (ii) Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits dated February 25, 2019, executed by Trustor in favor of Bank and recorded on February 28, 2019, as Instrument No. 2019-0180129 in the Official Records of Los Angeles County, California in connection therewith.

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under the foregoing deed of trust.

The foregoing assignment is made "AS IS, WHERE IS, AND WITH ALL FAULTS, DEFICIENCIES, AND DEFECTS, LATENT OR PATENT, KNOWN OR UNKNOWN", and without recourse or representation of any kind or nature.

*[Signature On Following Page]*

**Exhibit 4**
**Page 47**

IN WITNESS WHEREOF, this Assignment of Deed of Trust and Assignment of Rents is made to be effective as of the date first above written.

**ASSIGNOR:**

**PREFERRED BANK,**
a California banking corporation

By: _____

Name: ~~Sylvia Tseng~~

Its: ~~Senior Vice President~~

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of ~~California~~ New York    )
County of Queens    )

On May 15, 2024, before me, Christopher E. Lim, a Notary Public, personally appeared Sylvia Tseng, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

CHRISTOPHER E. LIM
STATE
OF NEW YORK
NOTARY PUBLIC
Qualified in
Westchester County
02LI6044329
MY COMMISSION EXPIRES 08/25/2026

**Exhibit 4
Page 48**

## EXHIBIT A TO ASSIGNMENT OF DEED OF TRUST
## LEGAL DESCRIPTION OF PROPERTY

Real property in the City of Beverly Hills, County of Los Angeles, State of California, described as follows:

LOT 24 BLOCK 93 OF BEVERLY HILLS, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 54 PAGES 57 TO 60 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPTH OF 500 FEET WITHOUT RIGHTS OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS OF RECORD.

APN: 4341-022-023

**Exhibit 4**
**Page 49**

# EXHIBIT 5

Exhibit 5
Page 50

 

**This page is part of your document - DO NOT DISCARD**



## 20240452323



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**07/11/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 32.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 107.00 |



**L E A D S H E E T**



202407110110005

**00024604499**



014776595

**SEQ:
02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



Exhibit 5
Page 51

E442318

RECORDING REQUESTED BY

First American Title Insurance Company

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
9255 Town Center Drive
Suite 200
San Diego, CA  92121

---

Space above this line for recorder's use only

Trustee Sale No. 1225234   Loan No.   APN: 4341-022-023

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $7,210,987.33 as of 06/30/2024 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

1

Exhibit 5
Page 52

Trustee Sale No. 1225234  Loan No.  Title Order No.

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Maguire North Elm LLC
400 Madison Avenue, Suite 5D
New York, NY  10017
Attn: Jason Leibowitz – (646) 677-8934 / legal@maguirecorp.com

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: First American Title Insurance Company is the duly appointed Trustee under a Deed of Trust dated 02/25/2019, executed by Westpoint Capital Group I LLC, as trustor, to secure obligations in favor of Preferred Bank, as Beneficiary recorded on February 28, 2019 as Document Number 20190180128 of official records in the Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust, including the note(s) for the sum of $6,373,200.00: The beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE UNPAID PRINCIPAL BALANCE OF $6,281,072.75 WHICH BECAME DUE ON THE MATURITY DATE OF 03/24/2024, PLUS ACCRUED INTEREST AND LATE CHARGES AND OTHER SUMS. FAILURE TO PAY PROPERTY TAXES IN A SUM NOT LESS THAN $83,696.62 AS OF THE DATE OF THIS NOTICE.  BORROWER IS FURTHER IN DEFAULT FOR ENCUMBERING THE PROPERTY WITHOUT LENDERS PRIOR WRITTEN CONSENT AND FAILURE TO COMPLY WITH THE COMPLETION DATE.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.
DATE: 7/9/24
First American Title Insurance Company

David Z. Bark, Foreclosure Trustee

2

Exhibit 5
Page 53

# EXHIBIT 6

Exhibit 6
Page 54




**This page is part of your document - DO NOT DISCARD**



## 20240699905



**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/15/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |



**L E A D S H E E T**



202410150970031

**00024875239**



014941823

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E646115



RECORDING REQUESTED BY


AND WHEN RECORDED MAIL TO

First American Title Insurance Company
9255 Town Center Drive
Suite 200
San Diego, CA  92121


Space above this line for recorder's use only

Trustee Sale No. 1225234   Loan No.   Title Order No.
APN 4341-022-023   TRA No.

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 02/25/2019.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

---

On 11/14/2024 at 11:00AM, First American Title Insurance Company as the duly appointed Trustee under and pursuant to Deed of Trust recorded on February 28, 2019 as Document Number 20190180128 of official records in the Office of the Recorder of Los Angeles County, California, executed by:  Westpoint Capital Group I LLC, as Trustor, Preferred Bank, as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state).  At: Behind the fountain located in Civic Center Plaza, 400 Civic Center Plaza, Pomona CA, all right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County, California describing the land therein:

LOT 24 BLOCK 93 OF BEVERLY HILLS, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 54 PAGES 57 TO 60 INCLUSIVE OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES
BELOW A DEPTH OF 500 FEET WITHOUT RIGHTS OF SURFACE ENTRY, AS RESERVED IN
INSTRUMENTS OF RECORD

APN: 4341-022-023

The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be:  509 North Elm Drive, Beverly Hills, CA  90210.

Exhibit 6
Page 56

Trustee Sale No. 1225234
Loan No.
Title Order No.
APN 4341-022-023

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to-wit: $7,544,569.95 (Estimated)

Accrued interest and additional advances, if any, will increase this figure prior to sale.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may visit the website below using the file number assigned to this case. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

2

Exhibit 6
Page 57

Trustee Sale No. 1225234
Loan No.
Title Order No.
APN 4341-022-023


NOTICE TO TENANT: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call (858) 410-2154, or visit this internet website [iSee Link Below], using the file number assigned to this case [TS 1225234] to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

For information on sale dates please visit our website at:

https://foreclosure.firstam.com/#/foreclosure

DATE: 10/11/24

First American Title Insurance Company
9255 Town Center Drive
Suite 200
San Diego, CA  92121
(858) 410-2158


David Z. Bark, Foreclosure Trustee

Exhibit 6
Page 58

# EXHIBIT 7

Exhibit 7
Page 59

To:  First American Title Insurance
      9255 Town Center Drive Suit 200
      San Diego, CA 92121
      Phone (858) 410-2158

Foreclosure Dept. Fax (877) 295-0957
ATTENTION: David Z. Bark

Attention: Bankruptcy Department


Via fax number (877) 295-0957


   Total pages 10


   **<u>Notice of bankruptcy filed re trustee sale number 1225234</u>**


   Date 11/13/2024


   In regard of the trustee sale number <u>1225234</u>
Property address; 509 North Elm Drive, Beverly Hills CA 90210
   (APN: 4341-022-023)
   The junior lien holders "(ROMELIA MARIA CASTANGO AND OSCAR HUMBERTO
   PARADA) filed a chapter 7 and chapter 13 bankruptcies under case numbers
   2:24-bk-19077-DA and 1:24-bk-11853-MB in the Central District of California.

Please immediately cancel the sale till bankruptcy court relief of stay.


Carbon Copies to:

1- Law offices of KING LLP.

2- U. S. bankruptcy court central district of California.


Exhibit 7
Page 60

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

First American Title Insurance Company
9255 Town Center Drive
Suite 200
San Diego, CA 92121

---

Trustee Sale No. 1225234   Loan No.   Title Order No.
APN 4341-022-023   TRA No.

Space above this line for recorder's use only

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 02/25/2019. UNLESS YOU TAKE ACTION TO PROTECT
YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF
THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

---

On 11/14/2024 at 11:00AM, First American Title Insurance Company as the duly appointed Trustee under and pursuant
to Deed of Trust recorded on February 28, 2019 as Document Number 20190180128 of official records in the Office of
the Recorder of Los Angeles County, California, executed by: Westpoint Capital Group I LLC, as Trustor, Preferred Bank,
as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in
lawful money of the United States, by cash, a cashier's check drawn by a state or national bank, a check drawn by a state
or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings
bank specified in section 5102 of the Financial Code and authorized to do business in this state). At: Behind the fountain
located in Civic Center Plaza, 400 Civic Center Plaza, Pomona CA, all right, title and interest conveyed to and now held
by it under said Deed of Trust in the property situated in said County, California describing the land therein:

LOT 24 BLOCK 93 OF BEVERLY HILLS, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 54 PAGES 57 TO 60 INCLUSIVE OF MAPS,
IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES
BELOW A DEPTH OF 500 FEET WITHOUT RIGHTS OF SURFACE ENTRY, AS RESERVED IN
INSTRUMENTS OF RECORD

APN: 4341-022-023

The property heretofore described is being sold "as is". The street address and other common designation, if any, of the
real property described above is purported to be: 509 North Elm Drive, Beverly Hills, CA 90210.

**Exhibit 7**
**Page 61**

Fill in this information to identify your case:

United States Bankruptcy Court for the:

**CENTRAL DISTRICT OF CALIFORNIA**

Case number (If known): _____

Chapter you are filing under:
- ☑ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

FILED

NOV 04 2024

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    06/24

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** <br><br> Write the name that is on your government-issued picture identification (for example, your driver's license or passport). <br><br> Bring your picture identification to your meeting with the trustee. | First name: **ROMELIA** <br> Middle name: **MARIA** <br> Last name: **CASTANON** <br> Suffix (Sr., Jr., II, III): | First name: <br> Middle name: <br> Last name: <br> Suffix (Sr., Jr., II, III): |
| **2. All other names you have used in the last 8 years** <br><br> Include your married or maiden names and any assumed, trade names and *doing business as* names. <br><br> Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | First name: <br> Middle name: <br> Last name: <br><br> First name: <br> Middle name: <br> Last name: <br><br> Business name (if applicable): <br> Business name (if applicable): | First name: <br> Middle name: <br> Last name: <br><br> First name: <br> Middle name: <br> Last name: <br><br> Business name (if applicable): <br> Business name (if applicable): |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – **0 2 4 3** <br> OR <br> 9 xx – xx – ___ ___ ___ ___ | xxx – xx – ___ ___ ___ ___ <br> OR <br> 9 xx – xx – ___ ___ ___ ___ |

Exhibit 7
Page 62

8187834312   Case 2:24-bk-19000-WB   Doc 22   Filed 11/21/24   Entered 11/21/24 15:10:27   Desc   4/10
09:06:06 a.m.   11-13-2024
Main Document   Page 74 of 89

Case 1:24-bk-11853-MB   Doc 1   Filed 11/04/24   Entered 11/04/24 13:42:15   Desc
Main Document   Page 1 of 10

**FILED**

**NOV - 4 2024**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

---

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

Central District of California ▾

Case number (If known): _____

Chapter you are filing under:
☐ Chapter 7
☐ Chapter 11
☐ Chapter 12
☑ Chapter 13

☐ Check if this is an amended filing

---

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy   06/24

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Identify Yourself

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | Oscar<br>First name<br><br>Humberto<br>Middle name<br><br>Parada<br>Last name<br><br>_____<br>Suffix (Sr., Jr., II, III) | _____<br>First name<br><br>_____<br>Middle name<br><br>_____<br>Last name<br><br>_____<br>Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years**<br><br>Include your married or maiden names and any assumed, trade names and *doing business as* names.<br><br>Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | _____<br>First name<br><br>_____<br>Middle name<br><br>_____<br>Last name<br><br>_____<br>First name<br><br>_____<br>Middle name<br><br>_____<br>Last name<br><br>_____<br>Business name (if applicable)<br><br>_____<br>Business name (if applicable) | _____<br>First name<br><br>_____<br>Middle name<br><br>_____<br>Last name<br><br>_____<br>First name<br><br>_____<br>Middle name<br><br>_____<br>Last name<br><br>_____<br>Business name (if applicable)<br><br>_____<br>Business name (if applicable) |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – _4_ _8_ _8_ _2_<br><br>OR<br><br>9 xx – xx – ___ ___ ___ ___ | xxx – xx – ___ ___ ___ ___<br><br>OR<br><br>9 xx – xx – ___ ___ ___ ___ |

Official Form 101                    Voluntary Petition for Individuals Filing for Bankruptcy                    page 1   **Exhibit 7**
**Page 63**

 

**This page is part of your document - DO NOT DISCARD**



# 20240768891



**Pages:
0006**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/07/24 AT 10:00AM**

| | |
|---|---|
| FEES: | 63.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 213.00 |



**L E A D S H E E T**



202411070750008

00024951926



014987973

**SEQ:
01**

DAR - Courier (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**



**Exhibit 7
Page 64**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

**ROMELIA MARIA CASTANON, OSCAR HUMBERTO PARADA
TSAAC DANIEL GONZALES and JUDITH MENDEZ**

18653 VENTURA BLVD NO 440
TARZANA, CA 91356



11/07/2024

*20240768891*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

**This Deed of Trust,** made this OCTOBER 01, 2024                                                             , between

**WestPoint Capital Group 1, LLC A CALIFORNIA LIMITED LIABILITY COMPANY**

hereinafter called
TRUSTOR,

whose address is **as 9631 W Olympic Blvd, Beverly Hills, Ca 90212**
(Number and street)                                                         (City)       (Zone)       (State)

### NATIONS TITLE COMPANY
herein called TRUSTEE, and

**ROMELIA MARIA CASTANON, OSCAR HUMBERTO PARADA, TSAAC DANIEL GONZALES and JUDITH MENDEZ**

Herein called BENEFICIARIES

**Witnesseth:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in Los Angeles County, California, described as follows:

### See Exhibit "A" attached hereto and made a part hereof

.The foregoing property is commonly known as **509 N Elm Drive, Beverly Hills, Ca 90210  (APN 4341-022-023)**

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**
1. Performance of each agreement of Trustor herein contained. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension of renewal thereof, in the principal sum of **$10,000.00** executed by Trustor in favor of Beneficiary or order.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonable necessary, the specific enumeration herein not excluding the general.
(2) To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.
(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.
(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.
Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deed necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.
(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.
(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

**Exhibit 7
Page 65**

(7)  That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)  That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may:  reconvey any part of

said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)  That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."  Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)  That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.  Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)  That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale.  Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of:  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12)  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)  That this Deed applies to, inures to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein.  In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)  That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15)  In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable.  Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument.  No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16).  Trustor acknowledges that the transfer or further encumbrance of the Property which is encumbered by this Deed of Trust could significantly and materially alter, impair or reduce Beneficiary's security for the note secured hereby (the "Note").  Among other things, Trustor acknowledges that Beneficiary has relied upon the principals of Trustor and their experience in owning and operating the Property in connection with the closing of the loan evidenced by the Note.  Accordingly, in the event that the Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, mortgaged, further encumbered or otherwise transferred or Trustor shall be divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained (which consent may be withheld in Beneficiary's sole and absolute discretion), then, the same shall constitute an Event of Default hereunder and under the Note and Beneficiary shall have the right, at its option, to declare any or all of the indebtedness secured hereby, irrespective of the maturity date specified herein, immediately due and payable and to otherwise exercise any of its other rights and remedies contained herein.  Without limiting the generality of the foregoing, it is agreed that the sale, conveyance, transfer or disposition of any of the interest in of any entity which is named as a Trustor herein; or the sale, conveyance, transfer or disposition of any of the interest in any entity whose shares or membership interest may have been pledged to Beneficiary under any other loan document between the parties shall be deemed to be a transfer of an interest in the Property.  If any consent to a transfer is given, the transferee by such transfer shall automatically become subject to and obligated by the terms of this Note and all of the other Loan Documents, but Trustor, and any other maker or guarantor of this Note shall not in any way be released from any liability or from any of Trustor's obligations hereunder.  Consent to any one transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

Exhibit 7
Page 66

**Signature of Trustor**

       **WestPoint Capital Group 1, LLC**
        **a California Limited Liability Company**

     **By: WestPoint Capital Group, LLC**
           **a California Limited Liability Company**
           **Its: Manager**

     **By: Madison Investment Group**
           **a California Corporation**
           **Its: Manager**

     **By:** _____
          **Farhad Farahmand (Its President)**

     **By: Neman Capital Group LLC,**
          **a California Limited Liability Company**
          **Its: Manager**

     **By:** _____
          **Robert Neman (Its Sole Member and Manager)**

**Exhibit 7
Page 67**

## EXHIBIT A

## LEGAL DESCRIPTION

Lot 24 Block 93 of Beverly Hills, in the City of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 54 Pages 57 to 60 inclusive of maps, in the office of the County Recorder of said County.

Except therefrom all oil, gas, minerals and other hydrocarbon substances lying below a depth of 500 feet from the surface of said property, but with no right of surface entry, as provided in deeds of record.

Also Known as:  509 North Elm Drive, Beverly Hills, CA  90210
APN#: 4341-022-023

**Exhibit 7**
**Page 68**

Page 6 of 6

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _31 October 2024_ before me, _Alexandra Kelsey Notary Public_

A Notary Public personally appeared _Farhad Farahmand,_

_Robert Newman_

_N/A_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Alexandra Kelsey_

> ALEXANDRA KELSEY
> COMM. #2453709
> NOTARY PUBLIC - CALIFORNIA
> LOS ANGELES COUNTY
> My Comm. Expires July 31, 2027

(Seal)

Exhibit 7
Page 69

# EXHIBIT 8

**Exhibit 8**
**Page 70**

**This page is part of your document - DO NOT DISCARD**






## 20240768891



**Pages:
0006**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/07/24 AT 10:00AM**

| | |
|---|---:|
| FEES: | 63.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 213.00 |





**L E A D S H E E T**



**202411070750008**

**00024951926**



**014987973**

**SEQ:
01**

**DAR - Courier (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



**Exhibit 8
Page 71**

E528330

Description: CA Los Angeles Document - Year.DocID 2024.768891 Page 1 of 6
Order: 2 Comment:

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

**ROMELIA MARIA CASTANON, OSCAR HUMBERTO PARADA
TSAAC DANIEL GONZALES and JUDITH MENDEZ**

**18653 VENTURA BLVD NO 440
TARZANA, CA 91356**

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

**This Deed of Trust,** made this OCTOBER **01, 2024**                                                                , between

**WestPoint Capital Group 1, LLC A CALIFORNIA LIMITED LIABILITY COMPANY**                      hereinafter called
                                                                                                                          TRUSTOR,

whose address is **as 9631 W Olympic Blvd, Beverly Hills, Ca 90212**
                          (Number and street)                                                        (City)          (Zone)          (State)

**NATIONS TITLE COMPANY**                                                          herein called TRUSTEE, and

**ROMELIA MARIA CASTANON, OSCAR HUMBERTO PARADA, TSAAC DANIEL GONZALES and JUDITH MENDEZ**

        Herein called BENEFICIARIES

**Witnesseth:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in
Los Angeles County, California, described as follows:

## See Exhibit "A" attached hereto and made a part hereof

The foregoing property is commonly known as **509 N Elm Drive, Beverly Hills, Ca 90210  (APN 4341-022-023)**

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to
collect and apply such rents, issues and profits.

**For the Purpose of Securing:**
        1. Performance of each agreement of Trustor herein contained.  2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and
any extension of renewal thereof, in the principal sum of **$10,000.00** executed by Trustor in favor of Beneficiary or order.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**
        (1)  To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and
workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished
therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to
commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use
of said property may be reasonable necessary, the specific enumeration herein not excluding the general.
        (2)  To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary.  The amount collected under any fire or
other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary
the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder
or invalidate any act done pursuant to such notice.
        (3)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all
costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear,
and in any suit brought by Beneficiary to foreclose this Deed.
        (4)  To pay:  at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due,
all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.
        Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to
or demand upon Trustor and without releasing Trustor from any obligation hereof, may:  make or do the same in such manner and to such extent as either may deed necessary
to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes;  appear in and defend any action or proceeding
purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in
the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.
        (5)  To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by
law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded
by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.
        (6)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall
be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds
of fire or other insurance.

**Exhibit 8
Page 72**

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may:  reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(15) In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16). Trustor acknowledges that the transfer or further encumbrance of the Property which is encumbered by this Deed of Trust could significantly and materially alter, impair or reduce Beneficiary's security for the note secured hereby (the "Note"). Among other things, Trustor acknowledges that Beneficiary has relied upon the principals of Trustor and their experience in owning and operating the Property in connection with the closing of the loan evidenced by the Note. Accordingly, in the event that the Property or any part thereof or interest therein shall be sold, conveyed, disposed of, alienated, hypothecated, assigned, pledged, mortgaged, further encumbered or otherwise transferred or Trustor shall be divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Beneficiary being first obtained (which consent may be withheld in Beneficiary's sole and absolute discretion), then, the same shall constitute an Event of Default hereunder and under the Note and Beneficiary shall have the right, at its option, to declare any or all of the indebtedness secured hereby, irrespective of the maturity date specified herein, immediately due and payable and to otherwise exercise any of its other rights and remedies contained herein. Without limiting the generality of the foregoing, it is agreed that the sale, conveyance, transfer or disposition of any of the interest in of any entity which is named as a Trustor herein; or the sale, conveyance, transfer or disposition of any of the interest in any entity whose shares or membership interest may have been pledged to Beneficiary under any other loan document between the parties shall be deemed to be a transfer of an interest in the Property. If any consent to a transfer is given, the transferee by such transfer shall automatically become subject to and obligated by the terms of this Note and all of the other Loan Documents, but Trustor, and any other maker or guarantor of this Note shall not in any way be released from any liability or from any of Trustor's obligations hereunder. Consent to any one transfer shall not be deemed to be a waiver of the right to require consent to future or successive transfers.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

**Exhibit 8**
**Page 73**

Description: CA Los Angeles Document - Year.DocID 2024.768891 Page 3 of 6
Order: 2 Comment:

**Signature of Trustor**

      **WestPoint Capital Group 1, LLC**
       **a California Limited Liability Company**

    By: **WestPoint Capital Group, LLC**
        **a California Limited Liability Company**
        **Its: Manager**

    By: **Madison Investment Group**
        **a California Corporation**
        **Its: Manager**

        By: _____
            **Farhad Farahmand (Its President)**

    By: **Neman Capital Group LLC,**
        **a California Limited Liability Company**
        **Its: Manager**

    By: _____
        **Robert Neman (Its Sole Member and Manager)**

**Exhibit 8**
**Page 74**

Description: CA Los Angeles Document - Year.DocID 2024.768891 Page 4 of 6
Order: 2 Comment:

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On 31 October 2024 before me, Alexandra Kelsey, NOTARY PUBLIC

A Notary Public personally appeared Farhad Farahmand, Robert Neman

N/A

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature]

ALEXANDRA KELSEY
COMM. #2453709
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires July 31, 2027

(Seal)



Description: CA Los Angeles Document - Year.DocID 2024.768891 Page 5 of 6
Order: 2 Comment:

## EXHIBIT A

### LEGAL DESCRIPTION

Lot 24 Block 93 of Beverly Hills, in the City of Beverly Hills, County of Los Angeles, State of California, as per map recorded in Book 54 Pages 57 to 60 inclusive of maps, in the office of the County Recorder of said County.

Except therefrom all oil, gas, minerals and other hydrocarbon substances lying below a depth of 500 feet from the surface of said property, but with no right of surface entry, as provided in deeds of record.

Also Known as:  509 North Elm Drive, Beverly Hills, CA  90210
APN#: 4341-022-023

**Exhibit 8**
**Page 76**

Page 6 of 6
Description: CA Los Angeles Document - Year.DocID 2024.768891 Page 6 of 6
Order: 2 Comment:

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
865 S. Figueroa Street, Suite 2800, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*): **[SEE ATTACHED PAGE]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 21, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Courtesy NEF | Chad L Butler, caecf@tblaw.com |
| Attorney for Creditor BMO Bank N.A. | Jennifer Witherell Crastz, jcrastz@hrhlaw.com |
| Trustee | Nancy K Curry (TR), TrusteeECFMail@gmail.com |
| Attorney for Creditor Capital One Auto Finance | Amitkumar Sharma, amit.sharma@aisinfo.com |
| United States Trustee | United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov |

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) November 21, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**[See attached page]**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 21, 2024 | Anabel Pineda | /s/ Anabel Pineda |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**DOCUMENTS SERVED**:

- **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) (REAL PROPERTY)**;

- **SUPPLEMENTAL DECLARATION OF JASON LEIBOWITZ**

**SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (cont'd)**:

**Via Overnight Mail**
Pro Se Debtor in *In re Castanon*:
Romelia Maria Castanon
3241 Garnet Street
Los Angeles, CA 90023

**Via Overnight Mail**
Trustee in *In re Castanon*:
Howard M. Ehrenberg
1875 Century Park East, Suite 1900
Los Angeles, CA 90067

**Via Overnight Mail**
(Former) Pro Se Debtor in *In re Parada*:
Oscar Humberto Parada
22000 Alizondo Drive
Woodland Hills, CA 91364

**Via Overnight Mail**
Pro Se Debtor in *In re Gonzales*:
Isaac Daniel Gonzales
13117 Spelman Drive
Victorville, CA 92392

**Via Overnight Mail**
Trustee in *In re Gonzales*:
Lynda T. Bui
Shulman Bastian Friedman & Bui LLP
3550 Vine Street, Suite 210
Riverside, CA 92507

**Via Overnight Mail**
Pro Se Debtor in *In re Mendez*:
Judith Mendez
6361 Quebec Drive
Los Angeles, CA 90068

**Via Overnight Mail**
Trustee in *In re Mendez*:
Nancy K. Curry
1000 Wilshire Boulevard, Suite 870
Los Angeles, CA 90017

**Via Overnight Mail**
Nondebtor-Borrower:
Westpoint Capital Group 1 LLC
Attn: Robert Neman
9631 W. Olympic Boulevard
Beverly Hills, CA 90212

**Via Overnight Mail**
Nondebtor-Borrower's Counsel:
Westpoint Capital Group 1 LLC
c/o Edmond Nassirzadeh
Nass Law Firm
1900 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

**Via Overnight Mail**
Potential Lienholder:
AEME Investments, LLC
Attn: George D. Eshaghian
16200 Ventura Boulevard, Suite 228
Encino, CA 91436

**Via Overnight Mail**
Potential Lienholder:
SMSE 26, LLC
Attn: Soleiman Nazarian
16200 Ventura Boulevard, Suite 228
Encino, CA 91436

**Via Overnight Mail**
Potential Lienholder:
Romano Studio, LLC
Attn: Dania Romano
2310 Michigan Avenue
Santa Monica, CA 90404

**Via Overnight Mail**
Potential Lienholder:
Farahi Construction, Inc.
Attn: Kamran Farahi
2933 N. Beverly Glen Circle
Los Angeles, CA 90077

**Via Overnight Mail**
Potential Lienholder:
FNTG Builder Services
Attn: Fred Farahmand
9631 W. Olympic Boulevard
Beverly Hills, CA 90212

**Via Overnight Mail**
(Judge's Copy)
Hon. Julia W. Brand
U.S. Bankruptcy Court, Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**